**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-CR-699 (JDB)** |
| | : | |
| **JOLY GERMINE,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **ELIANDE TUNIS,** | : | |
| | : | |
| **Defendants.** | : | |

### GOVERNMENT'S NOTICE OF EXPERT TESTIMONY

Pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, the United States provides the following disclosures concerning expert testimony that the United States will seek to introduce pursuant to Rules 702, 703, and 705 of the Federal Rules of Evidence. The United States reserves the right to offer additional testimony by these experts, or other expert witnesses, and for the experts to amend or adjust their opinions and bases therefor, based on information perceived by or made known to the experts before or during trial.

### A. Cellular Phone Technology and Records Expert

The government intends to call FBI Special Agent Kelly DiPietrantonio as an expert in the fields of cellular phone technology, cellular towers, and the analysis of historical cellular phone records for the purpose of determining the approximate location from which a phone was used at the particular time or ranges of times.

As explained in the disclosed curriculum vitae, Agent DiPietrantonio is a member of the FBI's Cellular Analysis Survey Team (CAST). Agent DiPietrantonio has undergone training with the FBI, private companies, and major U.S. cell phone providers to analyze cell phone call and cell tower data to locate cell phones for the purpose of locating missing persons and suspected criminals. Agent DiPietrantonio will testify at trial that locating cellular phones is accomplished by determining the locations of the cellular tower or towers used by a cellular phone to transmit or receive a phone call.

Agent DiPietrantonio will discuss how the towers operate, how cellular signals are sent and received, and how cellular towers are used in cellular phone calls. Agent DiPietrantonio will testify that cellular phones use radio frequencies to communicate. When a cellular phone is "on," the cellular phone constantly scans its environment, evaluating and ranking which towers have the strongest signal. When a cellular phone places or receives a call, it will use the cellular tower and sector with the strongest signal. The tower with the strongest signal generally comes from the tower that is closest to the phone, or in its direct line of sight.

Cell towers (sometimes referred to as cell sites) come in a variety of shapes and sizes. They also can be located in a variety of places, including but not limited to church steeples, chimneys, water towers, or the sides of buildings. A typical cell tower has three 120-degree sectors, which are typically labeled numerically.

At trial, Agent DiPietrantonio will explain how cell phones interact with cell towers, as well as interpret the call detail records in this case.  Agent DiPietrantonio will testify that cell phone companies maintain databases that capture and store information related to the usage of each customer's cellular phone.  These databases generate call detail records (CDRs). The CDRs document the network interactions to and from the cell phone, to include the date, time, duration, number called, and calling number.  Additionally, the CDRs capture the cell tower and cell sector ("cell site") which served the cell phone when contact was initiated with the network. An analysis was performed on the CDRs obtained for the subject cell phones. Used in conjunction, the call detail records and a list of cell site locations illustrates an approximate location of the subject cell phone when it initiated contact with the network.  A graphical representation has been prepared by Agent DiPietrantonio which shows the approximate geographic areas of the subject cell phone when the cell phone initiated contact with the network.

With respect to this case, Agent DiPietrantonio conducted an analysis of the call detail records and associated cellular tower records for phone calls and messages placed and received by three phone numbers: number ending 4844, number ending 4574, and number ending 1767 during the time period of July 15, 2021 to December 31, 2021. These records, along with additional records of calls and messages in the surrounding days, from Digicel have been provided in discovery.

Agent DiPietrantonio made a number of conclusions about the cell site records for that phone number on the date and times noted.  Agent DiPietrantonio will testify regarding the cell site records and her attached analysis of those records. For example, Agent DiPietrantonio concluded that, at the following times between July 15, 2021 and December 31, 2021, the following cellular towers were utilized by the phone number associated with defendant Eliande

Tunis:

- Between July 15, 2021 and August 1, 2021, the phone number utilized multiple towers near the Croix-des-Bouquets, Duval-Roche (along National Route 8), Drauilard, and Bellanium neighborhoods in Haiti;

- On July 19, 2021, between approximately 6:24 a.m. and 11:34 p.m., the phone number utilized towers near Croix-des-Bouquets and Duval-Roche near National Route 8;

- On July 22, 2021, between approximately 12:12 a.m. and 10:41 p.m., the phone number utilized towers near Croix-des-Bouquets and Duval-Roche near National Route 8;

- On July 24, 2021, between approximately 1:02 a.m. and 8:52 p.m., the phone number utilized towers near Croix-des-Bouquets and Duval-Roche near National Route 8;

- On July 27, 2021, between approximately 8:02 a.m. and 11:10 p.m., the phone number utilized towers near Croix-des-Bouquets and Duval-Roche near National Route 8;

- On July 28, 2021, between approximately 12:07 a.m. and 10:29 p.m., the phone number utilized towers near Croix-des-Bouquets and Duval-Roche near National Route 8;

- On July 29, 2021, between approximately 12:19 a.m. and 11:44 p.m., the phone number utilized towers near Croix-des-Bouquets and Duval-Roche near National Route 8;

- On July 29, 2021, between approximately 12:19 a.m. and 11:44 p.m., the phone number utilized towers near Croix-des-Bouquets and Duval-Roche near National Route 8;

- On July 31, 2021, between approximately 6:57 a.m. and 11:54 p.m., the phone number utilized towers near Croix-des-Bouquets and Duval-Roche near National Route 8. On this date, the phone number utilized towers near the Port-Au-Prince airport.

Additionally, tower analysis for phones belonging to other members of 400 Mawozo were conducted. Agent DiPietrantonio will testify that:

- On between October 16, 2021 and December 18, 2021, the phone utilizing number 4844 utilized towers around Croix-des-Bouquets 23 times, towers around Bellanium 197 times, towers near Drauilard 3121 times, and towers along National Route 8 132 times.

- On between October 16, 2021 and December 31, 2021, the phone utilizing number 4574 utilized towers around Croix-des-Bouquets 3 times, towers around Bellanium 29 times, towers near Drauilard 4357 times, and towers along National Route 8 42 times.

- On October 23, 2021 between 4:35 p.m. and 4:59 p.m, all three numbers—4844, 4574, and 1767—utilized towers near Croix-des-Bouquets and Drauilard.

We intend to introduce the CAST analysis as an exhibit at trial, which the expert will use to explain the analysis and conclusions. Agent DiPietrantonio's conclusions and analyses are captured in more detail in the attached draft presentation.

The agent will accordingly opine that for the phone interactions within the periods stated above that the defendant's cellular phone hit towers near the relevant locations noted in the indictment, particularly Croix-des-Bouquets, Bellanium, Drauillard near COI 1 and COI 20, the locations where hostages were held, and along National Route 8 which connects the Croix-des-Bouquets and Bellanium neighborhoods to the Drauilard area where the hostages were kept. Please refer to the presentation slides and images regarding the cell phones and their locations.

SA DiPietrantonio's CV, the report concerning the cell site analysis she performed, and the records from which she conducted her analysis have been produced in discovery. SA DiPietrantonio has not authored any publications in the previous 10 years. SA DiPietrantonio has testified as an expert at trial or by deposition in the following cases during the previous 4 years:

| Case Name | Court Case Number | Court (City,State,Federal) | Type of Case |
|---|---|---|---|
| State of Florida Vs. Gordon, Corey Wellington | 15001975CF10A | 17th Judicial Circuit - Broward County Courthouse | Child Homicide |
| United States of America vs. KEJUAN BRANDON CAMPBELL, a/k/a "Splash Zanotti," ANTONIO CHARLES JAMES JR., a/k/a "Yung Fokiss," and DIONTE ALEXANDER-WILCOX, a/k/a "Dionte Alexander," a/k/a "Trap Savage," | 21-60011-CR-SINGHAL | Southern District of Florida Federal Court - Fort Lauderdale | Kidnapping/Home Invasion |
| United States of America vs. Alexandra Ramirez | 21-60015-CR-SINGHAL | Southern District of Florida Federal Court - Fort Lauderdale | Minor Trafficking |
| State of Florida Vs. Martinez, Jason David | 16013010CF10A | 17th Judicial Circuit - Broward County Courthouse | Homicide |
| State of Florida Vs. Fulton, Raheem | 18015209CF10A | 17th Judicial Circuit - Broward County Courthouse | Homicide |
| State of Florida Vs. Gordon, Corey Wellington | 15001975CF10A | 17th Judicial Circuit - Broward County Courthouse | Child Homicide |
| [Defense deposition] State of Florida Vs. Bent, Kenneth | 13-2023-CF-012100-0001-XX | 11th Judicial Circuit -Miami-Dade County | Double Homicide |

*Kelly DiPietrantonio*

KELLY DIPIETRANTONIO
SA Federal Bureau of Investigation

**CURRICULUM VITAE**



*Kelly DiPietrantonio*
Federal Bureau of Investigation
Miami Division
2030 SW 145th Ave
Miami, Florida 33027
Kdipietrantonio@fbi.gov

**PROFESSIONAL EXPERIENCE**

**Federal Bureau of Investigation**                                                                                      **Miami, FL**
Special Agent                                                                                                    May 2018 – Present

- 2022 – Present: Currently assigned to a Public Corruption squad whose responsibilities include investigating instances of corruption by local, state and federal officials and focus on the abuse of the public position and/or misuse of governmental powers for private gain.
- 2019 – 2022: Assigned to the FBI Miami Joint Terrorism Task Force (JTTF), which is comprised of local, state and Federal investigators whose responsibilities include investigating a variety of violations of federal offenses, including international terrorism and money laundering. Specifically worked on an extra-territorial (ET) squad responsible for Shia extremists groups to include Hizballah and IRGC-QF, and non-Islamic extremist groups to include FARC and ELN in the Caribbean, Central and South Americas as well as the Miami area of responsibility.
- Provide cellular record analysis and technological assistance to local, state, federal, and foreign law enforcement partners including mapping and analyzing records.

**Federal Bureau of Investigation**                                                                                   **New York, NY**
Staff Operations Specialist                                                                                   July 2014 – May 2018

- Embedded on a public corruption/white collar crime squad operating out of the Long Island Resident Agency for the New York Field Office.
- Responsible for providing tactical analysis to include but not limited to: telephone analysis, travel analysis, social media exploitation, and financial analysis to investigators responsible for investigating federal violations of complex financial crimes, public corruption, and human trafficking offenses.
- Provided cellular record analysis and technological assistance to CAST members in the field and directly to local, state and federal law enforcement including mapping and analyzing records.

**Federal Bureau of Investigation**                                                          **New York, NY/Jacksonville, FL**
Intern                                                                                                             June 2013- July 2014

- Assisted Special Agents working in the Long Island Resident Agency (New York Field Office) who were responsible for investigating violent crimes and gangs in the Long Island Resident Agency.
- Assisted Agents working in the Daytona Beach Resident Agency (Jacksonville Field Office) who were responsible for investigating violent crimes/motorcycle gangs, white collar crimes, and counterterrorism cases.

**Nassau County Department of Probation, Sex Offense Unit**                                               **Mineola, NY**
Intern                                                                                                                        Spring 2013
- Observed weekly meetings with sex offender probationers, administered breathalyzer tests, observed hearings in District and County courts, observed case meetings with DWI, domestic violence and gang squads, conducted warrant checks and DMV checks, etc.

**George Scheld Investigations Inc.**                                              **Nesconset, NY**
<u>Intern</u>                                                                               Fall 2012

- Conducted surveillance of home and persons, conducted background investigations, served subpoenas and third party notices, purchased index numbers, etc.

## EDUCATION

Long Island University, Brookville, NY                                 January 2013 to December 2013
Master of Science in Criminal Justice

Long Island University, Brookville, NY                                 August 2010 to December 2012
Bachelor of Arts in Criminal Justice

## PROFESSIONAL TRAINING

FBI Cellular Analysis Survey Team

- CAST Annual Conference (2022/2023): Continuing education in various cellular topics, including: historical cell site analysis; cellular network infrastructure and 5G technology; advanced network engineering and timing advance; and telematics. Instruction was provided by the Florida Institue of Technology, Network Engineers and Records Custodians from each of the major cellular providers (AT&T, T-Mobile/Sprint, Verizon, and US Cellular); social media companies; and CAST. (24 Hours)
- Cellular Analysis Survey Team (CAST) Certification Course (August – September 2021): FBI sponsored course including 40 hours of instruction from the Florida Institute of Technology on Radio Frequency (RF) Theory and cellular networks including GSM, CDMA, UMTS, LTE, and 5G protocols.  Classroom and hands-on training on the use of the Gladiator Autonomous Receiver (GAR) for mobile drive testing. Instruction received directly from the cellular providers and their engineers for each of the four major cellular carriers, AT&T, T-Mobile, U.S. Cellular, and Verizon.  Received legal training and instruction on expert witness testimony. (160 Hours)
- CAST Critical Incident Readiness Assessment (June 2018): FBI sponsored field training exercise course focused on cell phone technology and geolocation analysis related to critical incidents. The course utilized practical case scenarios requiring students to apply their understanding of cellular theory to the analysis of CDRs with cell site location information to identify, solve and create a report regarding the specific case. The course also involved combining the principles of cellular theory with the analysis of CDRs to locate cell phones in the field. (32 Hours)
- CAST Advanced Historical Cell Site Analysis Course (September 2016 and September 2020): FBI sponsored course providing advanced instruction on cellular theory and the analysis of historcal CDRs with cell site location informaton through various case studies. The course also included the creation of cellular analysis reports. (64 Hours)
- CAST Basic Historical Cell Site Analysis Course (January 2016): FBI sponsored course providing an introduction to cellular theory and the analysis of historical call detail records (CDRs) with cell site location information from the four major US-based cellular service providers (AT&T, Sprint, T-Mobile, Verizon). (24 Hours)

FBI New Agents Training                                                                    May 2018
FBI Critical Incident Response Group- Intelligence Crisis Response Training          April 2017
FBI Geospatial Information Systems Day                                              February 2016
Intermediate Geospatial Tools and Techniques Using ArcGIS                      September 2015
Penlink- The Basics/Penlink Advanced                                                  July 2015
Introduction to Using ArcGIS for Geospatial Intelligence                              May 2015
Introduction to Geospatial Intelligence                                               April 2015
Common Operating Picture for Domain intelligence, Basic Geospatial Analysis and Operations   March 2015
Staff Operations Specialist Basic Training                                            March 2015

*Updated May, 2023.*

### B.   Expert on Firearms and U.S. Firearms Regulations

The Government intends to call Senior Special Agent Jaime Morales of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") as an expert witness on the identification of the firearms purchased by the defendants in this case, the structure and requirements of federal firearms licensing requirements, how the information collected from firearms purchases pursuant to federal law is used by law enforcement, and common attributes of unlawful firearms sales. Agent Morales will also testify based on his personal observations from participating in the investigation into the defendants' firearms exports.

### I.      Qualifications

Agent Morales has worked for ATF in various roles since 2001. Since 2020, he has been on detail as a Task Force Officer to the Miami Field Office of the Federal Bureau of Investigation ("FBI"), where he is assigned to a squad that investigates domestic terrorism-related criminal offenses. In addition, in his current role Agent Morales also serves as the ATF's representative to the Miami Joint Terrorism Task Force and as the ATF's Liaison Officer to U.S. Southern Command, where he works with the U.S. military to support international firearms trafficking investigations. As the only ATF officer assigned to the FBI's Miami Field Office, Agent Morales serves as the office's in-house subject matter expert for the FBI on firearms-related issues.

Prior to 2020, Agent Morales was assigned to the firearms trafficking group within the ATF's Miami Field Division, where he investigated trafficking offenses involving numerous types of firearms. Before that assignment, Agent Morales was assigned as an Intelligence Officer in the ATF Miami Field Division's Crime Gun Intelligence Center.

In the course of his career with the ATF, Agent Morales has completed multiple trainings, including training on criminal investigations at the Federal Law Enforcement Training Center and training on advanced criminal investigations at the ATF Training and Professional Development

Branch.

Agent Morales holds a Bachelor of Science in Criminology from Florida State University.

## II.      Statement of Expert Testimony, Bases, and Reasons

Agent Morales will testify about the structure and details of federal firearms licensing requirements, the dual purpose of such regulations to enable ATF and other federal law enforcement agencies to keep firearms out of the wrong hands and to trace firearms used in crimes, how information collected by licensed federal firearms dealers is used by the ATF in its investigations, and common attributes of unlawful firearms sales. Agent Morales will also testify about the identification of the firearms purchased by the defendants in this case. Agent Morales's expert testimony will be based upon, among other things, his professional and academic training, his twenty-two years of experience investigating criminal offenses related to firearms at ATF, his review of applicable laws, policies, and procedures related to U.S. firearms regulations, and his review of information about the firearms and ammunition exported in this case, in addition to his personal observations from participating in the investigation into defendants' activities.

The Gun Control Act of 1968, 18 U.S.C. § 921 *et seq*., requires a license to deal in firearms, which is known as a Federal Firearms License, or FFL. Under that statute, certain classes of people are prohibited from purchasing firearms, including felons and drug addicts. Licensed firearms dealers are prohibited from selling a firearm to anyone they know, or have reasonable cause to believe, is a prohibited buyer.

Federal law establishes a detailed scheme to enable licensed firearms dealers to verify whether a potential buyer may lawfully own a gun. Applicable law generally prohibits the sale of a firearm to someone who does not appear in-person at the point of sale. Other provisions require the dealer to verify the identity of the purchaser by examining a valid identification document bearing a photograph, ascertaining the purchaser's name, age, and place of residence, and running

that information through the National Instant Background Check System, known as NICS.

To implement these requirements and collect this information, licensed firearms dealers are required to fill out a Firearms Transaction Record, known as ATF Form 4473. Among other questions, on the first page of Form 4473, Question 21(a) asks (with bolded emphasis appearing on the form itself):

> Are you the actual transferee/buyer of all of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)? **Warning: You are not the actual transferee/buyer if you are acquiring any of the firearm(s) on behalf of another person.  If you are not the actual transferee/buyer, the licensee cannot transfer any of the firearm(s) to you.** Exception: If you are only picking up a repaired firearm(s) for another person, you are not required to answer 21.a. and may proceed to question 21.b.

At the end of Form 4473, the customer must sign a certification that all provided answers are "true, correct, and complete," and that the customer specifically understands that "answering 'yes' to question 21.a if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law." Two separate provisions of federal law criminalize certain false statements about firearms transactions. These provisions help make certain that a dealer will receive truthful information as to any matter relevant to a gun sale's legality.

Finally, to assist with the investigation into firearms used in criminal activity, federal law requires licensed firearms dealers to make the completed, original Form 4473 part of their "permanent records" and maintain them until their business is discontinued. Federal law enforcement, in turn, may inspect those records while conducting criminal investigations to determine the disposition of any firearms.

Agent Morales will explain the federal firearm licensing requirement for the sale of firearms in the State of Florida. He will testify about Form 4473, including explaining that those

who purchase firearms from a licensed firearms dealer are prohibited from buying a firearm on behalf of someone else and how that prohibition is conveyed on Form 4473. He will also testify about Form 4473, including how it is filled out, by whom, the information it communicates to the person filling out the form, and the requirement that the person filling out the form confirm the form's accuracy.

Based on his experience investigating crimes involving firearms, Agent Morales will testify about common attributes of unlawful firearms sales and how ATF uses firearms purchase data in its investigations. He will explain that so-called "straw purchasing" constitutes purchasing firearms on behalf of another person, instead of for oneself. Agent Morales will testify that a straw purchaser will often be utilized if the actual buyer is unable to purchase a firearm. He will further testify about some of the investigative tools used in investigations of straw purchases, including collecting and analyzing Forms 4473 from firearms dealers and conducting firearms tracing of collected firearms through ATF's National Tracing Center.

In addition, Agent Morales will testify about the purpose of these regulations in relation to ATF's enforcement mission, which includes reducing the risk to public safety caused by illegal firearms trafficking. Federal firearms laws place the focus on licensed firearms dealers to enforce federal law in this area. Because of the stringent license requirements and subsequent obligations imposed on firearms dealers, in addition to their access to NICS to conduct instant background checks, firearms dealers support two core ATF functions: first, the regulatory system's prohibitions help ensure that firearms are not obtained by individuals whose possession of them would be contrary to the public interest, including felons and drug addicts, and, second, the regulatory system's record-keeping provisions are designed to aid law enforcement in the investigation of gun-related crime.

Agent Morales will also identify the firearms that were purchased by, or attempted to be purchased by, the defendants, including the make, model, and caliber of the firearms in question. He will explain that the majority of the firearms purchased or attempted to be purchased were 7.62x39mm caliber rifles and 9mm pistols, but also included other rifles and one .50 caliber semi-automatic rifle.

Finally, Agent Morales will also testify based on his personal observations in this case about the firearms purchases that the defendants completed and attempted, including how he analyzed the results of firearms traces on firearms obtained from court-authorized searches, obtained records from the licensed firearms dealers at which the defendants purchased the firearms at issue, and personally reviewed the records obtained from the relevant licensed firearms dealers.

### III.    Prior Testimony and Publications

Agent Morales has not testified as an expert at trial in the past four years, nor does he recall having authored a publication in the previous 10 years.

JAIME MORALES
Digitally signed by JAIME MORALES
Date: 2023.11.16 21:59:41 -05'00'

JAIME MORALES
Senior Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

November 16, 2023
DATE

## Senior Special Agent Jaime Morales
Miami Field Division, Group IV
11410 NW 20th Street, Suite 200 Miami, Florida 33172
Office: 305-597-4800, Mobile: 786-███████
Email: Jaime.Morales@atf.gov

**OBJECTIVE:**
To use my instructor and mentoring skills to advance the Bureau of Alcohol, Tobacco, Firearms and Explosives' (ATF) domestic and international training mission.

**PROFESSIONAL EXPERIENCE**
**Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).** Miami Field Division Currently assigned to Miami IV. Dates Employed: June 18, 2001-Present
**Criminal Investigator/ GS 1811, 13/10**
- Serves as the sole ATF Agent on the Miami FBI Joint Terrorism Task Force (JTTF)
- Plans, directs and conducts investigations of violations of Chapter 44 of the United States Criminal Code
- Develops and supervises confidential informants
- Operates in an undercover capacity in furtherance of proactive investigations
- Uses fluent conversational Spanish to conduct interviews and operations
- Conducts and supports joint-State and local law enforcement investigations
- Manages a constantly evolving caseload and collateral duties
- Serves as Liaison Officer to USSOUTHCOM, working with the US Military to develop protocols to support international firearms trafficking investigations
- Previously served as MFD Intelligence Officer for the Crime Gun Intelligence Center
- Assisted State and Local partners with leveraging ATF led programs
- Special Operations Division, Special Response Team 5, Tactical Medic
- Special Response Team 5, Medic Team Leader, 2017-2021
- Plans and conducts TACMED training for medics, field agents and local partners
- Served as a Control and Arrest Techniques (CAT) Instructor
- Deployed to extended duty CONUS and OCONUS details

**Florida Department of Insurance, Fraud Division.** Dates Employed: November, 1999-June, 2001. 401 NW 2nd Avenue, Suite N-321, Miami, Florida 33128
**Law Enforcement Investigator II**

**Tallahassee Police Department.** Dates Employed: February, 1991-October, 1999
234 East 7th Avenue, Tallahassee, Florida 32303
**Police Officer**

**Florida Army National Guard.** Dates Employed: June, 1987-February, 1993
Company C, 1/111th Attack Helicopter Battalion, Craig Field, Saint John's Bluff Road, P.O. Box 14044, Jacksonville, Fl 32239
**Observation Helicopter Crew Chief (67V), Specialist-4**

**EDUCATION AND PROFESSIONAL TRAINING:**

**ATF Special Operations Division/Johns Hopkins Medical Institution**
Salt Lake City, Utah
Tactical Medical Operator Course (TMOC), July 2010, 2013, 2016, 2017, 2020, 2022

**ATF Special Operations Division/Johns Hopkins Medical Institution**
Various Locations, Nationwide
Annual Medical Recertification Course, Annually 2010-2022

**"Stop the Bleed" Training for Civilians**
Tampa, Florida
Instructor Certification, April 2018

**Miami Dade Police Department Training Bureau**
Miami, Florida
ATF Control and Arrest Techniques (CAT) Instructor Certification, August 2011

**Fort Hood Medical Training Facility**
Killeen, Texas
Emergency Medical Technician (EMT), June 2010

**ATF Training and Professional Development Branch**
Indianapolis, Indiana
Advanced Criminal Investigations Training, October, 2008

**Federal Law Enforcement Training Center (FLETC)**
Brunswick, Georgia
Criminal Investigator Training, October, 2001
ATF New Agent Training, April, 2002

**Florida State University**
Tallahassee, Florida
Bachelor of Science, May, 1990
Major: Criminology
Minor: Military Science

### C.  Expert on U.S. Export Control Regulations for Firearms and Ammunition

The Government intends to call Thomas J. Bond III, a Senior Export Licensing Officer for Firearms and Ammunition in the Bureau of Industry and Security ("BIS") of the U.S. Department of Commerce, as an expert witness on U.S. export controls in its case-in-chief at trial. Mr. Bond will provide testimony regarding the function and structure of the Commerce Control List ("CCL"), why the firearms exported by the defendants were controlled under particular Export Control Classification Numbers ("ECCNs"), and the license requirements for the export of these firearms. Mr. Bond will also testify that no defendant in this case applied for or received an export license.

### I.      Qualifications

Mr. Bond has worked on export control issues at BIS since 2013. He is currently the Senior Export Licensing Officer for Firearms and Ammunition within the Nuclear and Missile Technology Division, in the Office of Nonproliferation and Treaty Compliance within BIS. BIS advances U.S. national security, foreign policy, and economic objectives by ensuring an effective export control and treaty compliance system, and by promoting continued U.S. strategic technology leadership. BIS has authority under certain statutes, executive orders, and implementing regulations, including the Export Control Reform Act and the Export Administration Regulations ("EAR"). The Office of Nonproliferation and Treaty Compliance is responsible for administering U.S. unilateral export controls and the Commerce Department's multilateral export control responsibilities under certain international agreements. The Nuclear and Missile Technology Division administers the licensing of exports of firearms and ammunition, in addition to administering the licensing for the export of nuclear items and advised on exports of missile related items.

Since May 2020, when the firearms relevant to this case were transitioned from the U.S.

Munitions List overseen by the State Department to the Commerce Control List ("CCL") overseen by the Commerce Department, Mr. Bond has processed more than 7,100 export applications and analyzed more than 5,100 License Determinations related to firearms and ammunition.

Prior to working at the Commerce Department, Mr. Bond worked for 21 years at the Department of Defense, including most recently as Program Administrator for the Small Business Innovation Research Program in the Office of the Secretary of Defense.

Mr. Bond holds a Bachelor of Science degree in Chemical Engineering from Tennessee Technological University, and a Master in Engineering Administration from The George Washington University.

## II.    Statement of Expert Testimony, Bases, and Reasons

Mr. Bond will testify about the function and structure of the CCL, the export controls applicable to the firearms at issue in this case, and the license requirement for the export of those firearms. In addition, Mr. Bond will testify about any potential license exceptions that may apply to the firearms at issue in this case and whether the requirements of those license exceptions were fulfilled. Mr. Bond's expert testimony will be based upon, among other things, his academic and professional training and experience, his ten years of experience working at BIS, his review of applicable laws, policies, and procedures related to U.S. export controls, and his review of information about the firearms and ammunition exported in this case.

Under authority provided by the Export Control Reform Act of 2018, the Department of Commerce reviews and controls the export of certain items, including commodities, software, and technologies, from the United States to foreign countries through the EAR. In particular, the EAR restrict the export of items that could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. The EAR impose licensing and other requirements for items subject to the EAR

to be exported lawfully from the United States or re-exported lawfully from one foreign destination to another.

The most sensitive items subject to EAR controls are identified on the CCL. Items on the CCL are categorized by ECCN, each of which has export control requirements depending on destination, end use, and end user. Since March 9, 2020, non-automatic and semi-automatic firearms equal to .50 caliber or less are controlled under ECCN 0A501.a, shotguns are controlled under ECCN 0A502, and ammunition is controlled under ECCN 0A505.a. Firearms controlled under ECCN 0A501.a are controlled for national security, regional stability, and anti-terrorism reasons; shotguns controlled under ECCN 0A502 are controlled for crime control and firearms convention reasons; and ammunition controlled under ECCN 0A505.a are controlled for national security, regional stability, and firearms convention reasons. Based on those controls, and at all times relevant to this case, a license was required to export the firearms at issue in this case from the United States to Haiti.

Section 740.14 of the EAR describes the License Exception for "Baggage," known as License Exception BAG. Section 740.14(e) notes that License Exception BAG is applicable to the export under certain specified conditions of certain shotguns and shotgun shells, and firearms and related ammunition. Among other requirements, however, License Exception BAG only applies if the export-controlled items are within a person's baggage, they must be for the person's exclusive use, and they must be declared to U.S. Customs and Border Protection for inspection prior to the person's departure from the United States.

The License Exception for "Limited Value Shipments," known as License Exception LVS and covering exports of certain goods valued at less than a specified limit to certain countries, is applicable to exports of certain items controlled under ECCNs 0A501, 0A502, and 0A505. In this

case, however, it was not applicable to the firearms exported by the defendants because the specific entries for each ECCN on the CCL note that License Exception LVS is not applicable to the specific items at issue. Specifically, License Exception LVS is only applicable to exports of items under ECCN 0A501.c, .d, .e, and .x, but not firearms controlled under 0A501.a; only applicable to exports of shotgun "parts" and "components" under ECCN 0A502, not shotguns; and only applicable to exports of "parts" and "components" of ammunition under ECCN 0A505.x, not ammunition controlled under 0A505.a.

With respect to this case, Mr. Bond personally prepared the License Determinations for the firearms exported by the defendants to Haiti, which confirmed that they are controlled as indicated above. These License Determinations have been provided in discovery. Mr. Bond will also testify that, based on his review of the facts of this case and the firearms and ammunition exported by the defendants, the requirements of License Exception BAG and License Exception LVS were not fulfilled for the export of the firearms and ammunition at issue in this case.

In addition, Mr. Bond will also testify based on his personal knowledge of this case that he has witnessed and assisted in a search of the Department of Commerce's records of all licenses for exporting items to certain countries. Based on that search, Mr. Bond will testify that none of the defendants, including Joly Germine and Eliande Tunis, or any other known member of the 400 Mawozo gang in Haiti, applied for or received a license to export any items from the United States to Haiti. The Certified License History Check based on that search has been provided in discovery.

### III.    Prior Testimony and Publications

Mr. Bond has testified as an expert at two trials in the past four years.

- Mr. Bond testified on March 2, 2021, in *United States v. Santos*, Case No. 7:20-cr-1025-1 (S.D. Tex. March 2, 2021) (Minute Entry).

- Mr. Bond testified on December 20, 2022, in *United States v. Rogel-Rodas*, Case No. 4:21-cr-40058-KES-1 (D.S.D. Dec. 20, 2022).

In addition, Mr. Bond was due to testify in *United States v. Gonzalez-Rosales*, but the parties agreed and stipulated to Mr. Bond's testimony in advance of trial. *See* Case No. 5:22-cr-01513, Dkt No. 99 (S.D. Tex. Sept. 1, 2023).

Mr. Bond does not recall having authored a publication in the previous 10 years.


/s/ - signed *Thomas J. Bond 999*                    11/16/2023

THOMAS J. BOND III                                    DATE
Senior Export Licensing Officer
Bureau of Industry and Security
U.S. Department of Commerce

# Thomas J.(Jeff) Bond III

**Senior Export Licensing Officer for**
    **Firearms and Ammunition**
**Bureau of Industry and Security**
**Security Clearance:  Top Secret**

| |
|---|
| Email: Jeff.Bond @ bis.doc.gov |

| **EMPLOYMENT** | **Department of Commerce/BIS**<br>*May 2013 – Present (as of 11/16/23)*<br><br>**Position:  Senior Export Licensing Officer for Firearms/Ammunition**<br>• Processed more than **12000** export applications.<br>• Processed more than **7100** firearms/ammunition related export applications since May 2020 when these items transitioned to Department of Commerce.<br>• Analyzed more than **5100** License Determinations for firearms and ammunition related items submitted by law enforcement entities.<br>• Generated the BIS/Commerce official classifications on >**600** Commodity Classification Requests for firearms/ammunition related items since May 2020.<br>• More than **31** years in the federal government.<br>  (21 years at DoD, 10 years at Commerce/BIS) |
|---|---|

| **EDUCATION** | **The George Washington University**<br>   Masters in Engineering Administration<br><br>**Tennessee Technological University**<br>   BS – Chemical Engineering |
|---|---|

**Prior testimony:**
*U.S. v. Santos, et al* – Southern District of Texas, Docket No. 7:20-CR-1025 (Mar 2021).
*U.S. v. Jordi Raul Rogel-Rodas* – District of South Dakota, Case No. 21-40058,
    Docket No. 4:21-cr-40058 (Dec 2022).

**Stipulated Testimony:**
*U.S. v. Ruben Alfonso Gonzalez-Rosales* – Southern District of Texas, Criminal No. 5:22-CR-1513-S-3 (Sep 2023)

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052


BY:   ___/s/ *Beau Barnes*_____
KAREN SEIFERT
N.Y. Bar No. 4742342
KIMBERLY L. PASCHALL
D.C. Bar No. 1015665
Assistant United States Attorneys
National Security Section
601 D Street, N.W.
Washington, D.C. 20530
202-252-7527 (Seifert)
Karen.Seifert@usdoj.gov
202-252-2650 (Paschall)
Kimberly.Paschall@usdoj.gov

BEAU D. BARNES
D.C. Bar No. 1024150
Trial Attorney
Counterintelligence & Export Control Section
National Security Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
202-305-4679
Beaudre.Barnes@usdoj.gov